exercising that right. He has it because of his ownership of the stock. The statute gives him no right to inspect the general business books of the corporation, and his right to such an inspection comes from the common law, and is discretionary, and good motive toward the corporation must exist. With respect to inspection of the stock book, however, the Legislature has seen fit to give him an absolute right of inspection, and I understand the decisions to be that his motive in exercising that privilege is immaterial. Matter of Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461; People ex rel. Clason v. Nassau Ferry Co., 86 Hun, 128, 33 N. Y. Supp. 244; People ex rel. Gunst v. Goldstein, 37 App. Div. 550, 56 N. Y. Supp. 306; People ex rel. Callanan v. K., etc., R. R. Co., 106 App. Div. 350, 94 N. Y. Supp. 555; People ex rel. Fennelly v. Amalgamated Copper Co., 110 App. Div. 892, 96 N. Y. Supp. 1141, affirmed 184 N. Y. 573, 77 N. E. 1193; Same v. United Copper Co., 110 App. Div. 892, 96 N. Y. Supp. 1141, affirmed 184 N. Y. 578, 77 N. E. 1194.

In the Amalgamated Copper Case, supra, the relator owned 2 shares, of $100 each, out of $155,000,000 and the order directing a mandamus to compel inspection of the stock book was affirmed by this court and the Court of Appeals, in spite of voluminous allegations that the inspection was desired from selfish and improper motives; and the United Copper Case, supra, presented substantially the same facts and was similarly decided. However bad the rule may be, I can hardly see how the decisions and the statute can be ignored. It does not seem to me to be an answer to say that the issuing of a mandamus is discretionary, and hence discretion will be exercised against a stockholder with a bad motive. If he has the right, irrespective of motive, there is no room for the exercise of discretion.

The relator was clearly within his statutory rights, and the court below simply followed the statute, and I think its order should be affirmed.

---

(122 App. Div. 602.)

## In re GRANT.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

EXECUTORS AND ADMINISTRATORS—TEMPORARY ADMINISTRATOR — ACCOUNTING—LIABILITY OF. SURETIES—MATTERS OCCURRING PRIOR TO SURETYSHIP.

　　A surety on the bond of a temporary administrator who replaced a former surety was entitled, in a proceeding to charge the administrator with a devastavit of the estate in regard to a stock exchange seat, to show that, if there was such a devastavit, it took place prior to the time he became a surety, and for that purpose have the account filed by the temporary administrator referred back to the referee to whom it was originally referred, to admit evidence in relation to the Stock Exchange seat controversy.

Appeal from Surrogate's Court.

Proceedings for the judicial settlement of the accounts of Frederic Grant, as temporary administrator of James Grant, deceased. From an order of the Surrogate's Court denying a motion of a surety on the bond of the accounting temporary administrator to amend an order referring back the account filed by the temporary administrator to a

referee to whom it was originally referred, said surety appeals. Modified.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Richard O'Gorman, for appellant.
Arthur L. Marvin, for respondent.

McLAUGHLIN, J. James Grant died on the 22d of April, 1895, leaving a last will and testament, which was on the 29th of November of the same year admitted to probate, and letters testamentary issued to the executors therein named. A contest was had over the admission of the will to probate, pending which temporary letters of administration were issued to Frederic Grant, a brother of the intestate; he having given a bond with the American Surety Company as surety. On December 7, 1895, the temporary administrator filed his accounts in the Surrogate's Court, but which did not include a seat in the New York Stock Exchange, which stood in the name of the deceased, and which it was claimed was an asset of his estate. Objection was made to his accounts upon this as well as upon other grounds. About this time the American Surety Company applied to be released from its bond. The objections made to the accounts were referred to a referee, but all of them seem to have been then or thereafter withdrawn, except the one relating to the Stock Exchange seat. While the proceeding was pending before the referee, and in November, 1896, something over a year after the accounts were filed, the American Surety Company was released and a new bond given in the sum of $20,000. One of the sureties upon the new bond was this appellant. He was not nominally a party to the proceeding before the referee, and had no notice thereof, except so far as the same may be inferred from the fact that he took the place of the American Surety Company. The referee on the 12th of April, 1897, filed his report, in which he held that the temporary administrator should be charged with the value of the seat on the Stock Exchange which he fixed at $18,000. His report, however, was not confirmed; the surrogate denying a motion for that purpose, and directing that the matter be sent back to the referee "for the purpose of taking such proper and legal testimony as may be offered in support of the temporary administrator's claim that the seat in the New York Stock Exchange, for which a certificate stood in the name of the testator at the time of his death, is in fact a firm, and not an individual asset." This order was made in April, 1898, and thereafter no proceedings were taken before the referee until March, 1906, when the attorney for the contestant in the Surrogate's Court served a notice of hearing. In July, 1906, the appellant obtained permission from the Surrogate's Court to intervene as a party to the proceeding, and the following October an attempt was made to bring on the hearing before the referee, when the appellant obtained a stay, and moved that the order referring back the accounts to the referee be amended so as to admit evidence, not only in regard to the Stock Exchange seat, but also as to any matter which the parties might think material upon any of the issues raised by the objections to the

accounts. The motion was denied; and it is from this order that the present appeal is taken.

I think the order was properly denied as to all matters, except those relating to the Stock Exchange seat, the sale and disposition of that, and the proceeds derived therefrom. The appellant, being one of the sureties upon the bond of the temporary administrator, if there has been a devastavit of the estate, so far as the Stock Exchange seat is concerned, or the proceeds derived from the sale of the same, ought to be afforded an opportunity of proving that it took place prior to the time he became a surety; otherwise, he might be charged with such loss, when, in fact, it occurred prior to the time he became a surety. To this extent the order appealed from should be modified.

As to the other objections made to the accounts, and which were withdrawn, the order is right. The accounts of the temporary administrator were filed nearly 12 years ago, and the appellant became a surety nearly 10 years ago. No facts are stated which would have justified the surrogate in opening up the entire accounts when the objections which had been originally filed had been withdrawn.

The order appealed from, therefore, should be modified as stated in this opinion, and, as thus modified, affirmed without costs to either party. All concur.